J-A14020-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| PAUL KNOBLICH, DAVID KNOBLICH AND IRALDA KNOBLICH | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : : | |
| v. | : : : | |
| | : | No. 2282 EDA 2023 |
| ERIE INSURANCE EXCHANGE AND M&M HVAC, LLC | : : | |

Appeal from the Order Entered July 27, 2023
In the Court of Common Pleas of Monroe County Civil Division at No(s):
001224-CV-2021

BEFORE:  LAZARUS, P.J., STABILE, J., and LANE, J.

MEMORANDUM BY LAZARUS, P.J.:                    **FILED AUGUST 5, 2024**

Paul Knoblich, David Knoblich, and Iralda Knoblich (collectively, Appellants/the Knobliches) appeal from the order, entered in the Court of Common Pleas of Monroe County, granting summary judgment in favor of Appellee Erie Insurance Company (Erie), and entering declaratory judgment[1] in Erie's favor and against Appellee M&M HVAC, LLC (M&M) and the Knobliches.  The trial court found that Erie had no duty to defend or indemnify M&M in a separate lawsuit (underlying action)[2] filed by the Knobliches for faulty installation of a heating/cooling unit in their home.  Because the

---

[1] "[A]n order in a declaratory judgment action that either affirmatively or negatively declares the rights and duties of the parties constitutes a final order." ***Nationwide Mut. Ins. Co. v. Wickett***, 763 A.3d 813, 818 (Pa. 2000), citing 42 Pa.C.S. § 7532.

[2] The underlying action can be found at ***Paul Knoblich, et al. v. M&M HVAC, LLC, et al.***, No. 06108-2018 (Monroe County).

damages the Knobliches suffered were the result of poor workmanship and were not an accident, there was no "occurrence" under the Erie general liability policy to trigger its duty to defend and indemnify M&M in the instant declaratory judgment action. Thus, we affirm, based upon the opinion authored by the Honorable David J. Williamson.[3]

Erie insures M&M pursuant to a contractor's general liability (CGL) policy. In September 2017, the Knobliches entered into a contract with M&M for installation of a Direct Exchange (DX) dual stage geothermal heating and cooling system, using closed loop technology, to replace their existing oil burning system in their East Stroudsburg residence.[4] EarthLinked Technologies, Inc. (EarthLinked) manufactured the geothermal system. M&M's principal, Michael McKay, told the Knobliches that M&M could install the

_____

[3] On June 7, 2024, our Court granted Erie's application to strike the following non-record portions of the reproduced record; thus, we will not consider those portions on appeal:

- R. 182a-84a; 201a-08a; 213a-30a (parts of the transcript of David Knoblich's deposition);
- R. 234a-35a; 239a (parts of the transcript of Iraida Knoblich's deposition);
- R. 242a-247a; 251a-59a; 261a-66a; 269a-79a (parts of the transcript of Michael McCay's deposition); and
- R. 280a-316a (the transcript of Doug Ginn's deposition).

*See* Order, 6/7/24.

[4] The total contract price for the job was $60,000.00. The Knobliches paid a $10,000.00 deposit on September 25, 2017, and three additional payments, for a total of $55,000.00, in compliance with the contract's installment payment plan.

new system's air handler and compressor assembly using the home's existing air conditioning ductwork. The installation was projected to be completed within two to three weeks of its start date. *See* M&M-Knoblich Contract, 9/22/17, at 3.

In December 2017, the Knobliches claimed that the system was not functioning properly as the temperatures in some of the house's rooms differed by as much as 40 degrees. M&M unsuccessfully attempted to adjust the air flows. In late December 2017, the system completely shut down, leaving the Knobliches with no heat. EarthLinked also was unsuccessful in fixing the air flow and temperature issues in the home. Ultimately, the Knobliches retained a professional air balance expert who diagnosed the heating/cooling problem, prepared a report, and recommended a plan to improve the situation. The Knobliches hired a new HVAC contractor to remove and replace the majority of the home's old ductwork and complete the system installation.

On September 7, 2018, the Knobliches filed the underlying action in Monroe County, against M&M and EarthLinked, seeking damages in excess of $90,000.00. The complaint alleged breach of contract against M&M, negligent entrustment as to EarthLinked, and violations of the Unfair Trade Practices and Consumer Protection Law (UTPCPL) and fraudulent inducement as to M&M and EarthLinked. On September 9, 2019, Erie issued a letter (denial of coverage letter) asserting that, pursuant to "Commercial General Liability Coverage Form, CG-00 01 (Ed. 4/13) UF-9708," it had no duty to cover M&M

in the underlying action due to a "lack of an 'occurrence' that [would trigger coverage for] 'property damage' or 'bodily injury.'" M&M subsequently assigned the commercial liability claims coverage over to the Knobliches.

As a result of Erie's denial of coverage letter, the Knobliches filed the instant declaratory judgment action in March 2021, against Erie and M&M, seeking a declaration that Erie had a duty to defend and indemnify its insured, M&M, for damages alleged in in the underlying action. *See* Knobliches' Second Amended Complaint in Declaratory Judgment Action, 6/23/21, at 1. *See also* 42 Pa.C.S.A. §§ 7531-7541 (Declaratory Judgments); *id.* at § 7532 (scope of declaratory remedy includes courts having "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed"). In their complaint, the Knobliches averred that:

> [T]he underlying action alleges damages under each of three [c]ounts **caused by faulty, incomplete**[,] **and inexperienced workmanship** causing [the Knobliches] no reasonable alternative but to hire a separate contractor with more experience to complete the EarthLinked DX Geothermal Whole House Heat System in accordance with the manufacturer's installation manual and to perform as the manufacturer and homeowner intended.

Knobliches' Second Amended Complaint in Declaratory Judgment Action, 6/23/21, at ¶ 14 (emphasis added). The complaint further alleges that Erie contracted to "furnish product and completed operations coverage to insure and cover the damages **caused by the contractors' bad workmanship** as set forth in the [u]nderlying [a]ction." *Id.* at ¶ 15 (emphasis added). Finally, the Knobliches assert that they relied upon M&M's certificate of insurance with Erie when they hired the company to install the home heating/cooling system

and that, as a result, they are foreseeable third-party beneficiaries of the Erie policy. *Id.* at ¶ 17.

Erie filed preliminary objections to the Knobliches' original and amended complaints,[5] alleging that the pleadings should be dismissed for, among other things, legal insufficiency, failure to attach the Erie policy to the complaint, failure to allege that the Kobliches are the insureds under the Erie policy, and failure to plead any authority to enable the Kobliches, as third parties to the insurance contract, to proceed with the action. *See* Erie's Preliminary Objections, 4/27/21, at 3; *id.*, 6/4/21, at 3. After the Knobliches filed their second amended complaint in June 2021, the court dismissed Erie's preliminary objections.

On July 12, 2021, Erie filed an answer and new matter that included a counterclaim seeking a declaratory judgment that it had no duty to defend or indemnify M&M in the underlying action where "[t]he [Knobliches'] claims against M&M . . . arise entirely out of faulty workmanship" and where the "terms, conditions, and exclusions in the Erie Policy issued to M&M" do not create any obligation on Erie to indemnify or defend M&M. Erie Answer/New Matter/Counterclaim, 7/12/21, at 10.

On June 16, 2023, Erie filed a motion for summary judgment claiming, once again, that it has no duty to defend or indemnify M&M in the underlying action where the complaint fails to allege an "occurrence," seeks damages

---

[5] The Knobliches amended their complaint twice, on May 19, 2021, and June 23, 2021, in response to Erie's preliminary objections.

that are excluded from coverage, and any potential damages are not covered by the policy. *See* Brief in Support of Erie's Motion for Summary Judgment, 6/16/23, at 28. The Knobliches filed a brief in response to Erie's motion for summary judgment. On July 27, 2023, the trial court granted Erie's motion for summary judgment, concluding that Erie had no duty to defend or indemnify M&M in the underlying action. Specifically, the court entered a declaratory judgment in Erie's favor after determining that there was no accident that caused the damage to the Knobliches' home. Rather, the court found that M&M's faulty workmanship led to the geothermal system's failure.

The Knobliches filed a timely notice of appeal and, on October 5, 2023, filed a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[6] On appeal, the Knobliches raise the following issues for our consideration:

> (1) Whether the trial court erred as a matter of law in holding that [the Knobliches'] claim for damages resulted from uninsured defective workmanship instead of an insured "occurrence," and "[] accident, including continuous or repeated exposure to substantially the same general harmful conditions, [that] in this case [were] uncontrollable 40-degree indoor temperature swings throughout an entire winter heating season accident."
>
> (2) Whether the trial court erred as a matter of law in dismissing [the] Knobliches' claim for Completed Operation coverage, finding no "occurrence[,]" and further erred in applying the CGL Policy Endorsement UL-TD (12/09) exception to "Property" damage[,] where the damage claims are unrelated to a subcontractor's work?

Appellants' Brief, at 6.

_____

[6] On September 28, 2023, the trial court granted the Knobliches a 10-day extension to file their Rule 1925(b) statement.

"It is well established that an insurer's duties under an insurance policy are triggered by the language of the complaint against the insured." ***Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.***, 908 A.2d 888, 896 (Pa. 2006). Also, "[a] carrier's duty to defend and indemnify an insured in a suit brought by a third party depends upon a determination of whether the third party's complaint triggers coverage." ***Id.*** (citation omitted). Further, an insurer's duty to defend and indemnify "is to be determined <u>solely</u> by the allegation of the complaint in the action." ***Id.*** (emphasis in original; citation omitted).

> [Moreover, a] CGL policy may provide coverage where faulty workmanship caused bodily injury or damage to another property, but not in cases where faulty workmanship damages the work product alone. To permit coverage in such instances would convert CGL policies into performance bonds, which guarantee the work, rather than [] an insurance policy, which is intended to insure against accidents.

***Id.*** at 898-99 (citations omitted).

The Knobliches alleged in their complaint in the underlying action that M&M "failed to complete installation of the [] Geothermal System in a workmanlike manner, in accordance with the manufacturer's specifications" and, accordingly, M&M "breached its contract to perform all work in a professional manner according to all standard practices." Knoblich Complaint in Underlying Action, 9/7/18, at 6, 9. They list the specific installation defects as undersized zone dampers, incorrectly sized air registers and diffusers, undersized return grilles, insufficient manifold depths, an inefficient "dump

zone" damper, and defective ductwork—all a result of faulty workmanship. *Id.* at 8-10.[7]

Under the Erie policy, an "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Erie CGL Policy, CG 00 01 (ed. 4/13) UF-9708, Section V-Definitions, at ¶ 13. Although the term "accident" is not defined in the policy, our courts have "established that the term 'accident' within insurance policies refers to an unexpected and undesirable event occurring unintentionally[.]" ***Donegal Mut. Ins. Co. v. Baumhammers***, 938 A.2d

_____

[7] Specifically, the complaint alleges that M&M:

- **failed to complete installation of the geothermal system in a workmanlike manner**;
- failed to properly train and supervise its installation crew;
- **failed to install the system in accordance with manufacturer specifications** and the Knobliches' expectations;
- refused to consult with EarthLinked when told that the system had failed;
- refused or did not know how to identify and correct the "imbalanced heating, air flows[,]unreasonable noises[,] and excess energy demand placed on the system[;]"
- failed to follow all standard industry practices;
- failed to identify or cure the system defects causing the Knobliches to consult with and/or hire other professionals to determine the system defects;
- **continuously failed to perform its work in a professional manner according to all standard practices** when job failed second inspection due to defective ductwork, undersized zone dampers, lack of return air ducts[,] and insufficient manifold depths all contrary to manufacturer's specifications.

***See*** Knoblich Complaint in Underlying Action, 9/7/18, at 6-10 (emphasis added).

286, 292 (Pa. 2007). "[T]he key term in the definition of 'accident' is 'unexpected[,]' which implies a degree of fortuity." ***Id.***, citing ***Kvaerner***, 908 A.2d at 898.[8]

In the instant case, there was no triggering "occurrence" under the Erie policy to require it to defend or indemnify M&M where the defective work performed by M&M caused the heating problems. Thus, all consequential damages that followed were not a fortuitous or accidental event triggering Erie's duty to defend or indemnify. ***Kvaerner***, ***supra***.

In their second issue on appeal, the Knobliches argue that the trial court improperly dismissed their claim that faulty workmanship occurred "independent of an 'occurrence'" and, thus, was covered under the Products-Completed Operations hazard portion of the Erie policy. Appellant's Brief, at 22. Specifically, they assert that "Earth[L]inked . . . referred Poughkeepsie, New York company, Geothermal Solutions[, (Geothermal)] to M&M to perform outdoor drilling, earth taps, subgrade manifolds[,] and refrigerant lines," and

---

[8] The Erie policy defines "property damage" as:

   a. Physical damage to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Erie CGL Policy, CG 00 01 (ed. 4/13) UF-9708, Section V-Definitions, at ¶ 17.

that M&M "had nothing to do with this work and did not monitor it." *Id.* at 21. Where M&M "did not solicit, schedule, monitor[,] or oversee, in any way[, Geothermal's installation of the exterior component of the heating system]," *id.* at 22, the Knobliches contend that Geothermal's negligent installation of the hearing system is covered under the Completed Operations coverage portion of the Erie policy.

Nowhere in the underlying complaint do the Knobliches make any factual averments regarding Geothermal Solutions and its allegedly faulty work that would invoke Erie's duty to defend or indemnify. *Kvaerner*, *supra*. Rather, the Knobliches allege that the faulty work was performed by M&M, through its principal Michael McKay, and M&M's installation crew, and that EarthLinked committed negligence by referring M&M to perform the system installation. *See* Knoblich Complaint in Underlying Action, 9/7/18, at 4, 6-11, 13-16. Thus, we find that the Knobliches have failed to invoke any duty to defend or indemnify on Erie's part by failing to allege Geothermal's negligent installation of the heating system in the underlying complaint. *See Scopel v. Donegal Mut. Ins. Co.*, 698 A.2d 602, 607 (Pa. Super. 1997) (allegations included within four corners of complaint dispositive of insurer's duty to defend).

After reviewing the record on appeal, the parties' briefs, and relevant case law, we affirm the order on appeal on the basis of Judge Williamson's

September 25, 2023 opinion.[9]  We agree with Judge Williamson that the damages the Knobliches suffered were not caused by an accident.  Thus, there was no triggering "occurrence" under the Erie policy to require it to defend or indemnify M&M.  **Kvaerner**, **supra**.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/5/2024

---

[9] We instruct the parties to attach a copy of Judge Williamson's opinion in the event of further proceedings in the matter.